IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| KENNETH WHITE,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. BANK, et al.,<br><br>    Defendants. | Civil Action No. 16-5879 (RMB/KMW)<br><br>**OPINION** |

Appearances:

Kenneth White
36473-060
FCI Fort Dix
Inmate Mail/Parcels
EAST: P.O. BOX 2000
Fort Dix, New Jersey  08640

    *Pro Se Plaintiff*

Daniel Ginzburg, Esq.
The Ginzburg Law Firm, P.C.
151 Highway 516, Unit 736
Old Bridge, New Jersey 08857

    *Attorney for Defendants*

**BUMB**, United States District Judge

    This matter is before the Court upon a motion for summary judgment filed by Plaintiff, appearing pro se [ECF No. 23], and a motion for summary judgment filed by Defendants U.S. Bank National Association ("U.S. Bank") and Richard K. Davies (collectively the "Defendants").  For the within reasons,

1

Defendants' motion will be granted, and Plaintiff's motion will be denied. All other remaining motions are dismissed as moot or without merit.

On or about July 20, 2016, Plaintiff, pro se, filed a Complaint in the Superior Court of New Jersey, Burlington County. The Complaint alleged that on August 20, 2009, Defendants "took, purloined, confiscated, from Kenneth White (d.b.a Urban Investment Group, Inc.) out of separate business accounts $50,104.94 (savings account) and the sum of $183,130.13 (business checking account) without any legal or personal authorization to do so." (Notice of Removal Ex. 1 ("Compl.") at 3 [ECF No. 1-1].) Plaintiff did not allege separate causes of action, but alleged generally that he was "entitled under the Constitutions of New Jersey, Minnesota, and the United States to be secure in his person, houses, papers and effects. This right was violated by U.S. Bank when it took Mr. White's effects (money), and also state and federal laws." Id.

On September 23, 2016, Defendants removed the action to this Court under diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff was alleged to be a citizen of the State of Ohio, although he is presently incarcerated at FCI Fort Dix, New

2

Jersey serving a lengthy sentence with a projected release date in 2029.[1]

The following facts are taken from Defendants' Statement of Undisputed Material Facts pursuant to L.Civ.R. 56.1(a) ("DSUMF"). Plaintiff has not disputed these facts, although he has generally denied Defendants' defenses. In ruling on Defendants' Motion for Summary Judgment, the Court construes all inferences, liberally in favor of Plaintiff, the non-moving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

On October 2, 2008, Plaintiff opened a U.S. Bank account, with an account number ending in 6154 (the "6154 Account"). The account was in the name of Urban Investment Group Inc. ("Urban Investment"). Plaintiff made himself a joint owner of that account. DSUMF ¶ 2 [ECF No. 17-1]. On November 7, 2008, Plaintiff opened another U.S. Bank account, account number ending in 5258 (the "5258 Account") and also in the name of Urban Investment. Plaintiff made himself a joint owner of that account. Id. ¶ 3.

---

[1] Plaintiff has never disputed that he is a citizen of Ohio. An incarcerated person does not take citizenship of the state in which he is incarcerated. McCracken v. Murphy, 129 F. App'x 701, 702 (3d Cir. 2005) ("In this case, because [the plaintiff] was incarcerated when he filed his complaint, his citizenship is determined by his state of domicile immediately before being incarcerated.").

On July 13, 2009, Plaintiff deposited a check in the amount of $93,376.61, drawn on the account of the United States Treasury Department, into the 5258 Account. The payee on the check was Conan Thompson, a non-party, who endorsed the check to Urban Investment and sent a notarized letter to U.S. Bank authorizing Plaintiff to deposit the check as part of a purported real estate transaction. Id. ¶ 4. Four days later, on July 17, 2009, a wire transfer in the amount of $205,000 came into the 5258 Account. The wire transfer was from the Bank of America, N.A. account of Bags by Rich, which is a non-party entity owned by Richard Dukes, who is also a non-party. Id. ¶ 5. These large deposits raised concerns within U.S. Bank, which contacted Bank of America. In turn, Bank of America informed U.S. Bank that the Bags by Rich account had recently been funded by several large U.S. Government tax refund checks, each made out to Ohio residents. Id. ¶ 6.

On July 21, 2009, U.S. Bank contacted the Internal Revenue Service ("IRS"), which confirmed that the $93,376.61 check was a legitimate check from the U.S. Treasury Department, but the IRS had determined that it was part of a series of checks issued as a result of false tax returns being filed by or on behalf of various individuals. This was also true of the money wired into U.S. Bank, as the IRS confirmed that each of the checks

negotiated through the Bags by Rich account at Bank of America was the product of false tax return filings. Id. ¶¶ 7, 8.

Pursuant to U.S. Bank's Deposit Agreement with Plaintiff (the "DAA"), U.S. Bank was permitted to place a hold on Plaintiff's accounts if it suspected any fraudulent activity. Specifically, the DAA stated:

> We reserve the right to place a hold on your account if we suspect irregular, fraudulent, unlawful or other unauthorized activity involved with your account. We may attempt to notify you of such a hold, but we are not required to provide notice prior to placing the hold. You agree that we may maintain such a hold until all claims against you or us to the funds held in your account, whether civil or criminal in nature, have been resolved fully in our sole satisfaction.

Id. ¶ 15. Moreover, U.S. Bank reserved the right to close any account "for any reason or for no reason at all." Id. ¶ 16.

On August 3, 2009, U.S. Bank transferred funds from the 5258 Account and the 6154 Account, in the combined amount of $233,235.07, to a holding account pending further direction from the IRS. Id. ¶ 17. On October 7, 2009, the IRS sent a letter to U.S. Bank advising that it had issued certain tax refunds incorrectly and requested U.S. Bank's assistance to recover any amounts in its possession, up to $330,000, given to Plaintiff. Id. ¶ 18. On November 12, 2009, U.S. Bank sent a cashier's check to the IRS in the amount of $233,235.07, which represented all of Plaintiff's available funds in U.S. Bank's possession. Id. ¶ 19.

**SUMMARY JUDGMENT**

Summary judgment should be granted if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, "a mere scintilla of evidence," without more, will not give rise to a genuine issue for trial. Anderson, 477 U.S. at 249. In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986). "Summary judgment motions thus require judges to assess how one-sided evidence is, or what a fair-minded jury could reasonably decide." Williams v. Borough of West Chester, Pa.,

891 F.2d 458, 460 (3d Cir. 1989) (internal quotation marks omitted).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

As best this Court can determine, Plaintiff's claim against Defendants is one of conversion under both New Jersey Law and Minnesota Law. The statute of limitations for such claim under each state's law is six years. N.J.S.A. 1A:14-1; M.S.A. § 541.05(4). Plaintiff waited almost seven years before filing this lawsuit. He has set forward no basis as to why the six

7

year statute of limitations should not be enforced in this case.[2] Indeed, as Defendants point out in the DSUMF, which Plaintiff does not dispute, on July 23, 2009, a U.S. Bank representative spoke with Plaintiff's criminal defense counsel who noted that Plaintiff was under criminal indictment. DSUMF ¶ 8. Presumably, Plaintiff was aware of the accounts' activity and U.S. Bank's conduct.

Moreover, Plaintiff makes no allegations at all against the individual Defendant, Richard K. Davis, the Chairman and Chief Executive Officer of U.S. Bank. Moreover, even if he had, U.S. Bank has submitted evidence that Davis had no involvement with this matter. Plaintiff, once again, has not disputed this at summary judgment. Accordingly, summary judgment is granted in favor of Defendant Davis.[3]

Summary judgment will be granted in favor of Defendants. For the same reasons, Plaintiff's Motion for Summary Judgment

---

[2] Defendants contend that Plaintiff should have abided by the terms of the DAA and contacted U.S. Bank within 30 days of receiving notice of the alleged improper transfers, or to have commenced a legal action against U.S. Bank within one year as required by the DAA. Because this action is time-barred in any event without reference to the shortened limitations period set forth in the DAA, the Court need not reach this issue.

[3] The Court need not reach Defendants' argument that even if they did not properly transfer the funds to the IRS pursuant to the provisions of the DAA, such funds would have been transferred to the United States anyway because Plaintiff owes restitution in the amount of $2,183,568.47 to the United States as a result of his criminal fraud conviction.

will be denied.  The remaining pending motions are thus denied as moot[4] or without merit.[5]  [ECF Nos. 18, 36, 38].

                                            s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            UNITED STATES DISTRICT JUDGE

Dated: May 11, 2017

---

[4] Having dismissed the case at summary judgment, the Court finds it unnecessary to reach Plaintiff's motions for the appointment of counsel.  Should the Plaintiff seek to present evidence on the tolling of the statute of limitations, he may bring a new motion for the appointment of counsel, which the Court will address at that point.  Prior to such a motion being brought, however, Plaintiff would need to seek relief from a final order by way of Federal Rule of Civil Procedure 60(b).

[5] Plaintiff has sought Rule 11 sanctions against Defendants for purportedly failing to serve him with a request for automatic extension of the return date of a motion and failure to serve him with a letter to the Court concerning Defendants' notification of its contacting the IRS for documents.  Plaintiff additionally appears to request sanctions for the very decision to ask for an extension of time.  None of the grounds put forth by Plaintiff warrants sanctions under Rule 11 or any other sanctioning power. Gordon v. United Continental Holding, Inc., 73 F. Supp. 3d 472, 481 (D.N.J. 2014) ("Generally sanctions are prescribed only in the exceptional circumstance where a claim or motion is patently unmeritorious or frivolous." (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir. 1991)).